María Luisa Delgado Viuda de Heyliger, demandante y apelada, *v.* Minnie M. Miller, demandada y apelante.

No. 6508.—*Sometido:* Noviembre 27, 1934. *Resuelto:* Diciembre 14, 1934.

*Arturo Ortiz Toro,* abogado de la apelante; *Enrique Báez García,* abogado de la apelada.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

María Luisa Delgado viuda de Heyliger reclama la posesión de cierta parcela de terreno. Se alega que la demandante estaba en posesión, dentro del año anterior a la radica-

ción de la demanda, de una finca que se describe detalladamente y que tiene una cabida de una cuerda más o menos. Se añade que allá para el 20 de abril de 1932 la demandada Minnie M. Miller, sin permiso ni consentimiento de la demandante y contra la voluntad de la misma, penetró, ayudada de dos peones, en la referida finca, tendiendo una cerca de alambres desde la colindancia norte a la colindancia sur, arrancando las mayas existentes sobre el terreno, y privando a la demandada de una parcela de terreno encerrada entre la nueva cerca que se describe así:

"Norte, un caño, sur, callejón de Boca Morena, que va al mar, al este, resto de la parcela donde está construída la estación de servicio para la venta de gasolina y al oeste la zona marítima terrestre. Dicha parcela está dividida en dos porciones: Una, la mayor, que queda al sud y que tiene mil setecientos cuarenta y nueve metros setenta y un centímetros cuadrados, teniendo por el norte 27 metros 92 centímetros, por el sur 23 metros 81 centímetros, por el este 90 metros y por el oeste 94 metros 84 centímetros, y la otra, la más pequeña, que queda al norte, que tiene forma triangular con 96 metros 27 centímetros cuadrados, midiendo por el noroeste 11 metros 50 centímetros, por el sudoeste 18 metros 60 centímetros y por el este 17 metros 10 centímetros."

Se alega además que la demandada ha estado ocupando la referida parcela contra la voluntad de la demandante, a la cual ha privado de su posesión y disfrute, proponiéndose construir edificaciones sobre dicha parcela y ordenando que la misma sea cultivada por personas puestas allí por dicha demandada.

Aunque en el hecho primero de la demanda se alega la posesión y no el dominio de la parcela que allí se describe, la demandada, sin embargo, niega que la demandante sea dueña de dicha parcela y afirma que por el contrario la misma pertenece al Pueblo de Puerto Rico y forma parte de un predio de 3,286 metros cuadrados que se describe en la contestación.

Niega la demandada que penetrara en la parcela que se

describe en el hecho primero de la demanda en contra de la voluntad ·de la demandante el día 20 de abril de 1932 ni en ninguna otra fecha, y alega que ese día, con el consentimiento y conocimiento de la demandante, tendió una cerca de alambres en la línea divisoria existente entre una parcela de terreno arrendada por El Pueblo de Puerto Rico a la demandada y el resto de la parcela que se describe en el hecho segundo de la contestación, la cual tuvo arrendada la propia demandante desde el año 1917 ·hasta noviembre de 1930. También alega la demandada que esta línea· divisoria fué fijada y marcada antes de abril de 1932, de común acuerdo con El Pueblo de Puerto Rico, según el plano levantado por ingenieros del Departamento del Interior en abril de 1931, con el consentimiento de la propia demandante.

La corte inferior declaró con lugar la demanda y ordenó que la demandante fuese restituída en la posesión de la parcela de terreno que ha dado origen a este litigio. Se atribuyen a la corte inferior varios errores, siendo el primero el que se relaciona con la prueba. Se alega que se cometió error manifiesto en la apreciación de la misma.

█ █ No hay duda alguna de que la demandante estaba en posesión de la parcela de terreno ocupada por la demandada. Isabel Heyliger Delgado declara que el terreno en litigio estaba cercado desde tiempo remoto y que esas cercas fueron arrancadas por la Sra. Minnie Miller. La propia demandada dice que en su presencia el capitán de puerto se dirigió a doña Luisa diciéndole: ''La faja de veinte metros que es de El Pueblo de Puerto Rico fué arrendada por Minnie y ella va a tomar posesión; como usted la tiene cercada, se le ruega de quitar su cerca para que esta señora ponga la suya.''

La referida demandada admitió, por conducto de su abogado, durante la vista de ·esta causa, que había arrancado la cerca de mayas y puesto una cerca de alambres en dirección de norte a sur. La Sra. Miller pone mucho énfasis en el hecho de que la demandante poseyó este terreno como arren-

dataria del Pueblo de Puerto Rico, quien últimamente lo arrendó a la referida demandada. Aunque El Pueblo de Puerto Rico sea dueño de este terreno y aunque lo haya arrendado a María Luisa Delgado, es claro que no puede privar violentamente de la posesión material a la demandante para entregarla a su nueva arrendataria. Cuando un arrendatario se resiste a entregar la posesión material a su arrendador, la ley concede un remedio, que es el procedimiento de desahucio, y a él debe acudirse para obtener judicialmente la posesión material del inmueble arrendado. Si el arrendador no puede incautarse violentamente de la posesión material en caso de detentación, tampoco puede entregar esa posesión a un nuevo arrendatario.

Se alega, sin embargo, que la demandada tomó posesión del terreno con el conocimiento y consentimiento de la demandante. Se arguye en el error quinto, que discutiremos conjuntamente con el primero, que la corte no tomó en consideración las presunciones de los apartados quinto y décimoquinto del artículo 102 de la Ley de Evidencia, según los cuales se presume que toda evidencia voluntariamente suprimida resultará adversa si se ofreciere y que los deberes de un cargo han sido cumplidos con regularidad. Arguye la demandada que la demandante principió por suprimir su propia declaración, la de su abogado cuando ocurrieron los hechos, Sr. Arnaldo, y la del peón que según testigos de la demandada fué enviado por la demandante para presenciar la mensura del terreno. Aun cuando se presume que toda evidencia voluntariamente suprimida resultaría adversa si se ofreciere, sin embargo, entendemos que la prueba de la propia demandada, aisladamente considerada, puede servir de base para justificar las conclusiones de la corte sentenciadora. Declara dicho tribunal que la demandante nunca dió su consentimiento para que la demandada penetrase en la finca y ejercitase sobre ella los actos de posesión alegados, sino que, por el contrario, quedó establecido que la deman-

dante protestó siempre, oralmente y por escrito, de las actuaciones de la Sra. Miller.

El testigo Enrique Castro declara que recordó a la demandante que había hecho un convenio con El Pueblo de Puerto Rico sobre una faja de veinte metros y que iba a marcar a doña Minnie la referida faja, que la señora se opuso y dijo que no, que aquello le pertenecía a ella y que el testigo le manifestó que recordara que había hecho una transacción verbal con el Sr. Huyke, contestándole la demandante que estaba conforme; que entonces dicha señora le dijo a su yerno que fuera a buscar un abogado y vino el Lic. Arnaldo y que doña Luisa no negó y aceptó que el testigo marcara los veinte metros sobre el terreno; que le dijo a doña Luisa que viniera a presenciarlo, contestándole que no, que estaba enferma, pero que mandó un peón, y el testigo, con el Sr. Trujillo y el peón, marcó la línea de veinte metros y luego se retiró.

El testigo Trujillo Lange declara lo siguiente:

"P. ¿Cuál ha sido su intervención?

"R. El ingeniero Enrique Castro se presentó un día en mi oficina para que le acompañara para dar posesión de una faja de veinte metros, de El Pueblo de Puerto Rico, a la señora Minnie Miller, que la tenía arrendada al Pueblo de Puerto Rico. Yo lo acompañé, y con motivo de eso nos acercamos a la casa de la señora viuda de Heyliger, y allí el señor Castro y yo le informamos nuestra finalidad, y ella aceptó la conformidad de que se arrendara, y entonces nos mandó una persona para que nos entregara los puntos, y fuimos al terreno y allí yo cogía la cinta mientras Castro medía la faja de terreno.

"P. ¿De qué terreno?

"R. De la jafa de terreno de veinte metros que colinda con doña Luisa y la zona marítima.

"P. Y al sur y norte ¿con quién colinda?

"R. Con más terrenos de El Pueblo de Puerto Rico.

"P. ¿Separados por qué?

"R. Por un camino. En aquella época no había ninguno.

"P. ¿Qué área tenía el trozo arrendado?

"R. No lo sé. Hay una faja de veinte metros.

"P. ¿Se le dió posesión a doña Minnie?

"R. ¡Ah, sí!, y doña Luisa mostró su conformidad, y más tarde se presentó la señora Minnie a mi oficina a decirme que no la dejaban poner la cerca de alambre, y entonces le dije que estaba a su disposición y fuimos a casa de don Alfredo Arnaldo. . . No. finalmente, después de algunas cosas fuimos donde ella como a las 3 de la tarde, y allí estaba el Lcdo. Arnaldo con una carta del Comisionado que se la leyó.

Hon. Juez: ¿Qué ocurrió allí? ¿Ustedes estaban sobre el terreno?

"P. Después que se leyó la carta, ¿cuál fué la actitud de doña Luisa?

"R. Mostró su conformidad, en que ella decía que tenía su palabra, que ella estaba conforme, y le dió una satisfacción a doña Minnie, y más tarde me enteré que había este pleito."

Del testimonio producido por la demandada Minnie M. Miller copiamos lo siguiente:

"P. ¿Y cuándo entró Ud. en posesión del inmueble?

"R. En posesión, llevé conmigo al que representa a El Pueblo de Puerto Rico en Mayagüez, que es Jesús Trujillo y fuimos allá. Como doña Luisa Delgado tenía arrendada la faja. . .

"          .     .     .     .     .     .     .     .          .

"R. . . . Fuimos a casa de Heyliger. Entonces el Capitán del Puerto habló—yo no hablé—y le dijo: 'doña Luisa, la faja de 20 metros que es de El Pueblo de Puerto Rico fué arrendada por Minnie' —él me conoce porque tiene un poquito de confianza conmigo—y así mismo habló: 'ella va a tomar posesión. Como usted la tiene cercada, se le ruega de quitar su cerca para que esta señora ponga su cerca,' y ella se opuso diciendo que ésos eran terrenos de ella, que hacía tiempo, y yo estuve conforme y no hice caso. Me fuí a mi casa y escribí al Departamento pidiendo explicaciones, y en vez de contestarme vino el señor Eduardo Castro con Jesús Trujillo Lange y fueron a mi casa y me dijo que el Departamento había recibido mi carta y que iba a casa de doña Luisa para decirle que ella había aceptado la transacción que había hecho con El Pueblo de Puerto Rico; que ella sabía que la faja de 20 metros era de El Pueblo de Puerto Rico; que ella tenía un año para arrendarla y que yo la había arrendado, y fué allá y ella no aceptó. Entonces el señor Castro le dijo: 'doña Luisa, yo vengo aquí para que usted acepte o rechace la transacción que usted hizo con El Pueblo de Puerto Rico. ¿Por mediación de su abogado, usted aceptó o no aceptó?' Y ella dijo: 'Mi palabra no la echo para

atrás; yo acepté la transacción dejando la faja de veinte metros para El Pueblo de Puerto Rico, pero tampoco acepto que esta señora la acepte, porque yo tengo opción', y él le dijo: 'Usted tenía un año para hacerlo, y no lo hizo.'

"P. ¿De manera que no se opuso a que usted entrase en posesión?

"R. Ella no se opuso; ella·aceptó.

"Testigo:

Luego, cuando el señor Castro le habló y el Capitán de Puerto, ella dijo: 'Está bien'; y entonces el señor Castro le dijo: 'Yo voy a fijar los puntos para que esta señora ponga sus puntos; si usted quiere mandar a algún familiar para que lo presencie, puede hacerlo,' y mandó ·un peón, y entonces en presencia mía y el señor Castro y un peón de ella se fijaron los puntos para poner la cerca.

"P. ¿De manera que ese peón estuvo con ustedes?

"R. Sí, señor, detrás, de lado, delante y fijándose.

"P. ¿Y tiraron los puntos?

"R. Sí señor, entonces el señor Castro fijó los puntos como a 4 ó 5 metros para no desviar la línea."

Las manifestaciones de los testigos de la demandada no revelan en la demandante una disposición a permitir los actos de posesión ejercitados por la Sra. Miller. Su estado de ánimo es más bien de oposición que de asentimiento. Su actitud no demuestra que se desprendiese voluntariamente de la posesión del terreno. La declaración de la Sra. Miller, por ser la demandada, merece preferente atención. Sus palabras, que parecen ser las que más se ajustan a la verdad, más bien que asentimiento tienden a demostrar oposición de parte de la demandante. No es extraño que estos testigos, que por el carácter de su testimonio han podido no ser creídos, hayan engendrado dudas en la conciencia del juzgador.

Algún tiempo después de la visita de Castro al hogar de la demandante, aparece ésta escribiéndole al Comisionado del Interior la siguiente carta, que fué ofrecida como prueba por la parte demandada:

"Me permito dirigirme a Ud. para informarle de lo que ocurre.— La propiedad mía colinda con la zona marítima, por el oeste, según consta en mi escritura o título de propiedad, presentados a ese De-

partamento cuando se hizo la solicitud del deslinde.—Su antecesor Sr. Esteves, ordenó se hiciera el deslinde igual al de la compañía de gasolina, la 'Shell', y al del Sr. don Félix Rexach para los trabajos del malecón, dejando veinte metros de zona marítima.—Le suplico me informe qué terrenos le han sido arrendados a Minnie Miller por el Sr. don Gustavo Ramírez de Arellano, Comisionado Interino, pues esa mujer quiere ocupar los terrenos que me pertenecen y ha mandado arrancar mis cercas de alambre.—El Hon. Juez don Pablo Berga ha leído mis títulos de propiedad, le fueron enseñados por mi hija Sra. Isabel Heyliger de Grigg. El Ingeniero Sr. Fortuño y el Sr. don Francisco D. Márquez también ellos pueden decirle a Ud. cómo he cooperado para que se hicieran las carreteras de esta playa y la que atravesando mis terrenos, empalma con la carretera No. 2.—Le ruego, Honorable Señor, se sirva venir a esta playa cuando Ud. venga a esta ciudad y tendré el gusto de enseñarle sobre el terreno mismo, el abuso que esta mujer está cometiendo conmigo en nombre del P. de P. R.—En espera de una contesta quedo de Ud. atentamente, (fdo.) María Luisa D. Vda. de Heyliger.''

El agrimensor Sr. Castro recibió instrucciones para trasladarse a Mayagüez a mediados de abril de 1932, y la carta que antecede tiene fecha 29 de junio del mismo año.

En esta prueba y la que aportara la demandante se basó la corte inferior para formular sus conclusiones.

Isabel Heyliger Delgado, hija de la demandante, declara que se opuso a los propósitos de la demandada cuando estuvieron en su casa ella y el capitán de puerto, y cuando más tarde volvieron acompañados del Sr. Eduardo Castro, el ingeniero, que según el capitán había sido enviado por el Departamento para medir la parcela de la zona marítima.

La demandada declara que después que doña Luisa Delgado quedó conforme, a los dos o tres días, empezaron sus peones a limpiar la faja de veinte metros y que cuando estaban trabajando vino Isabel Heyliger y les dijo: "Fuera de ahí todo el mundo;" y que como ella le nombró al fiscal, fué donde dicho funcionario y le preguntó, pero que el fiscal no se metió con ella. Isabel Heyliger testifica que cuando arrancaron las cercas vivía en la finca un celador llamado

Juan Valentín; que su mamá se encontraba en el pueblo y que la testigo vió al fiscal para contarle los acontecimientos.

Rufino Colón describe la finca donde tiene su casa de vivienda, dice que en esa finca de cuerda y media tiene Arcadio Ramírez un depósito de gasolina, y que cuando la Sra. Miller estaba cercando llegó doña Isabel Heyliger y paró al que estaba picando la maya. Añade que su casa quedó encerrada dentro de lo que ocupó la Sra. Miller y que la parcela de terreno donde vive es de doña Luisa Delgado, está sembrada de palmas de coco y se dedica a tener vacas.

César Ruiz declara que cuando estaba arrancando unas mayas por orden de la Sra. Miller en el pedacito de terreno que ella midió, se presentó doña Isabel Heyliger y le preguntó quién mandaba sacar esa maya de allí, que el testigo le contestó que doña Minnie y que entonces se salió de arrancar la maya.

Dada la prueba producida con respecto al atribuído consentimiento de la Sra. Delgado y su actitud a raíz de la visita a su casa de los funcionarios de El Pueblo de Puerto Rico, así como toda la prueba que obra en autos, nos inclinamos a creer que no debemos nosotros alterar el juicio formulado por la corte inferior. En la carta escrita al Comisionado del Interior la demandante dice que la Sra. Miller quiere ocupar los terrenos que le pertenecen y que ha mandado a arrancar sus cercas de alambres, y habla del abuso que esta mujer está cometiendo con ella. Estas palabras no parecen demostrar asentimiento. Sus actos posteriores demuestran todo lo contrario. En vista de la evidencia aportada es posible que la demandante se abstuviese de declarar como testigo, porque no creyó que se hubiese establecido un caso a favor de la demandada después de producida esta prueba. El tribunal *a quo* ha dictado su fallo y no estamos nosotros en condiciones de poder afirmar que haya incurrido en manifiesto error al apreciar dicha prueba.

El segundo señalamiento de error carece de importancia. Se basa en que la corte concedió la suspensión del juicio.

Después de practicada alguna prueba de la parte demandante, la corte, el viernes 23 de septiembre de 1932, suspendió la vista para el lunes 26 del mismo mes. El error apuntado debe ser desestimado.

El tercer error se basa en que la corte no resolvió que la demandante estaba impedida de impugnar la posesión de la demandada, después de haberla inducido a creer que era arrendataria de una parcela de terreno de la cual formaba parte la ocupada por la demandada. No vemos en qué pueda consistir el *estoppel*. La Sra. Miller alegó que la demandante tomó en arrendamiento al Pueblo de Puerto Rico una parcela de terreno de 3,286 metros y que el terreno ocupado por ella formaba parte de esta parcela que últimamente fué arrendada a dicha demandada. Para probar esta alegación presentó un contrato autorizado por la demandante y El Pueblo de Puerto Rico, representado por el Comisionado del Interior. Aunque el terreno en litigio formase parte de dicha parcela, sobre lo cual existe alguna controversia, no acertamos a comprender cómo por el hecho de ser arrendataria pueda la demandante estar impedida de impugnar la posesión de la demandada. Como ya dijimos antes, cuando el arrendatario incurre en detentación de la propiedad, el arrendador no puede tomarse la justicia por su mano. Tiene que acudir a los tribunales de justicia para establecer su derecho. Debe desestimarse este error.

El cuarto error se basa en no haber aplicado la corte inferior a la prueba los principios de los artículos 21 y 162 de la ley de evidencia. De acuerdo con el artículo 21, se presume que un testigo dice la verdad, aunque esta presunción puede ser destruída por su manera de declarar, por el carácter de su declaración, o por evidencia que afecte su veracidad, honradez, integridad o móviles, o por evidencia contradictoria. No creemos que el tribunal *a quo*, al formular su juicio, haya actuado en contra de las presunciones establecidas por la ley de evidencia. Apreció la prueba, estableció sus conclusiones y dictó su fallo, porque entendió

que la demandante fué privada de la posesión de su propiedad en contra de su voluntad. El artículo 162 de la referida ley dispone que en los casos civiles la afirmativa en una cuestión deberá probarse, y, cuando la evidencia fuese contradictoria, la decisión deberá pronunciarse de acuerdo con la preponderancia de la prueba. La demandante estableció la posesión del terreno sin ningún género de dudas. La demandada no probó a satisfacción de la corte que hubiese tomado posesión del terreno con el consentimiento de la demandante como alegó en su contestación. Debe desestimarse el alegado error.

El sexto error se basa en que no se levantó un acta de la inspección ocular que se llevó a cabo estando presentes la parte demandante asistida de su abogado y la demandada también personalmente y representada por el Lic. Arturo Ortiz Toro, Procurador General Interino de Puerto Rico. No llamó la atención la demandada al juez para que se redactara el acta de la inspección ni estableció excepción alguna en aquel acto ni después, por la omisión de la corte en redactar la referida acta. En todo caso no es éste un error tan importante que pueda provocar la revocación de la sentencia.

El séptimo y último error se basa en no haber resuelto la corte que teniendo El Pueblo de Puerto Rico un interés adverso a la demandante en este caso y siendo la parte a través de quien poseía la demandada no procedía el ejercicio de esta acción. Se establece la defensa de que El Pueblo de Puerto Rico, teniendo un interés adverso a la demandante, no ha prestado su consentimiento para ser demandado. Aparte de que ninguna persona, incluyendo al Pueblo de Puerto Rico, está autorizada para tomarse la justicia por su mano, y sin detenernos a considerar el alcance del artículo primero de la ley para autorizar demandas en ciertos casos contra El Pueblo de Puerto Rico, aprobada en 1916 y enmendada en 1928, opinamos que la corte inferior no ha incurrido en el error que se le atribuye, por tratarse de un

interdicto para recobrar la posesión, dirigido exclusivamente contra la Sra. Miller, quien se encuentra en la posesión material de la parcela de terreno que se reclama.

*Debe confirmarse la sentencia apelada.*

### VOTO DISIDENTE DEL JUEZ ASOCIADO SEÑOR ALDREY

La prueba demuestra a mi juicio que la demandada está ocupando el lote de terreno a que se refiere la demanda porque la posesión del mismo le fué dada por el ingeniero don Enrique Castro con el conocimiento y el consentimiento de la demandante, quien dispuso que en ese acto estuviese presente un empleado suyo, quien presenció tal entrega. Si después la demandante se arrepintió de haber consentido en que ese terreno, que había tenido en arrendamiento del Pueblo de Puerto Rico, fuese entregado a la demandada, es cuestión que no puede afectar a este procedimiento.

La demandante no declaró en el juicio y el único testigo que presentó en él no contradice la prueba de la demandada en cuanto al consentimiento a que hemos hecho referencia.

La sentencia apelada debió ser revocada y absolverse a la demandada.